[Cite as *State v. Butler*, 2013-Ohio-543.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0066** |
| MICHAEL B. BUTLER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 00031.

Judgment:  Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellant).

*R. Brian Moriarty,* R. Brian Moriarty, L.L.C., 2000 Standard Building, 1370 Ontario Street, Cleveland, OH  44113 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, the state of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting the motion to suppress of appellee, Michael B. Butler, to exclude evidence of the results of an Intoxilyzer 8000 test.  At issue is whether the trial court erred in requiring the state to present evidence of the reliability of the Intoxilyzer 8000 as a predicate for the admission of Butler's breath test results at trial.  Based on this court's precedent in *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, we reverse and remand.

**{¶2}** On January 3, 2012, a citation was filed against Butler charging him with driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), and driving with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1)(d). He was also cited for failure to control, in violation of R.C. 4511.202. Butler pled not guilty.

**{¶3}** On March 22, 2012, Butler filed a motion to suppress, arguing, inter alia, that the results of his breath test from the Intoxilyzer 8000 should be suppressed because the test was not administered in accord with procedures set forth in the NHTSA Manual. Thereafter, on April 5, 2012, Butler filed a brief captioned, "supplemental authority concerning defendant's motion to suppress." In this brief, he made two arguments. First, he argued that his breath test was invalid in that it was not administered in compliance with Ohio Adm.Code 3701-53-04, which requires that the Intoxilyzer 8000 automatically perform a dry gas control test before and after every subject test. Second, appellant suggested, without noting any specifics, that the Intoxilyzer 8000 is not reliable.

**{¶4}** On May 2, 2012, the state filed a brief, which it captioned as its opposition to Butler's motion in limine, although Butler had not as yet filed such a motion. In its brief, the state apparently anticipated the argument the state expected Butler to make in a motion in limine. The state argued that, pursuant to *State v. Vega*, 12 Ohio St.3d 185 (1984), it was not required to present evidence to establish the general reliability of the Intoxilyzer 8000 prior to the state's introduction of Butler's breath test results. The state argued that the legislature delegated to the Ohio Director of Health the authority to determine reliable breath testing devices, and the Supreme Court in *Vega* upheld this delegation.

**{¶5}** Thereafter, on May 4, 2012, Butler filed a motion in limine, again arguing that his breath test was not performed in compliance with Ohio Adm.Code 3701-53-04,

2

which, he repeated, requires a dry gas control test before and after every subject test. He argued that, due to this violation and "recognizing that the issue if [sic] currently pending on appeal," the results from his Intoxilyzer 8000 test should be suppressed. Butler did not argue, even generally, that the Intoxilyzer 8000 is unreliable.

{¶6} By its judgment, dated June 20, 2012, the trial court granted Butler's motion to suppress. The court found that, pursuant to its previous ruling in *State v. Johnson*, Case No. R 11 TRC 4090, the state was required to produce evidence to convince the court that the Intoxilyzer 8000 is reliable in order for its test results to be admissible at trial. The court found that to deny Butler the opportunity to challenge the scientific evidence of his guilt is a denial of due process. As a result, the court ordered that the results of Butler's breath test from the Intoxilyzer 8000 would not be admissible at his trial. The court stated it would set the remaining charges under R.C. 4511.19(A)(1)(a) and R.C. 4511.202 for trial.

{¶7} The state filed a motion to stay execution of the trial court's judgment pending appeal, which the trial court granted. The state now appeals the trial court's ruling on Butler's motion to suppress, asserting one assignment of error. Butler has not filed a brief on appeal. For its sole assigned error, the state alleges:

{¶8} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶9} As a preliminary matter, the state argues that the relief sought and obtained by Butler from the filing of his motion to suppress establishes that the trial court's judgment entry was automatically appealable by the state. This court addressed this same issue in *Carter, supra*. In *Carter*, this court held that, regardless of the label of Carter's motion, it was a motion to suppress since it resulted in the exclusion of

3

evidence that was essential to prove the per-se OVI charge. *Id.* at ¶11. This court thus held that the court's ruling granting the motion to suppress was a final, appealable order. *Id.* Based on this court's determination in *Carter*, we hold that the trial court's judgment granting Butler's motion to suppress was a final, appealable order.

{¶10} Now turning to the merits of the state's appeal, in granting Butler's motion to suppress, the trial court concluded that the state was required to establish by expert testimony the reliability of the Intoxilyzer 8000 before Butler's breath-test results could be admitted at trial. The court did not address Butler's specific challenges to the admissibility of his breath-testing procedure. The state argues on appeal, as it did in the trial court, that it was not required to present expert testimony of the machine's reliability due to the legislative determination in R.C. 4511.19 that breath-testing instruments approved by the Director of Health, including the Intoxilyzer 8000, are reliable.

{¶11} Thus, the issue before us is whether the state was required to present expert evidence to prove that the Intoxilyzer 8000 is a reliable breath-testing instrument as a predicate for admitting Butler's breath test results at trial.

{¶12} This court addressed the identical issue in *Carter*, *supra*. In *Carter*, this court noted that in *Vega*, *supra*, the Supreme Court of Ohio held that, in enacting R.C. 4511.19, the legislature delegated to the Director of Health, not the courts, the discretionary authority to determine which breath-testing devices are reliable. *Carter* at ¶24, citing *Vega* at 189. This court in *Carter* also noted that the *Vega* Court's prohibition against a general attack on the reliability of a Director-approved breath-testing instrument allows for a specific challenge to the reliability of the Intoxilyzer 8000. *Carter* at ¶35.

{¶13} Based on this court's decision in *Carter*, we hold that the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's reliability and in

4

granting Butler's motion to suppress; further, pursuant to these erroneous rulings, the trial court erred in excluding the results of Butler's breath test with no evidence to overcome the presumptive reliability of the Intoxilyzer 8000. *Id.* at ¶42.

**{¶14}** In light of this court's analysis in *Carter*, *supra*, once the state has demonstrated an approved breath-testing device was used, a defendant may make specific challenges to the general reliability of the Intoxilyzer 8000. In this case, it is undisputed that the Intoxilyzer 8000 is an approved device. On remand, therefore, Butler is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000.

**{¶15}** For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.

TIMOTHY, P. CANNON, P.J., concurs,

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

**{¶16}** R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

**{¶17}** R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from

5

approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶18} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶19} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶20} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability

6

presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶21} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶22} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

{¶23} However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

{¶24} The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered

7

the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

{¶25} Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶26} In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

{¶27} Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St. 3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of

8

intoxilyzers in general.  Our case is limited to whether the Intoxilyzer 8000 is reliable.  In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶28}  Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect.  *See State v. Johnson*, Portage County Municipal Court, January 6, 2012.   *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue.  *Vega* at 187, fn. 2.   Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶29}  Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'"  (Emphasis added.)  *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968).  Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"?  The answer is "yes" if it is generally reliable and "no" if it is not.  This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶30}  In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable.  Under the circumstances, this decision was sound and reasonable.     This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*.  *Caroll v Caroll*, 7th

9

Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

**{¶31}** Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

**{¶32}** When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

**{¶33}** This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.