[Cite as *State v. Tsibouris*, 2014-Ohio-2612.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-120414 |
| | | C-120415 |
| Plaintiff-Appellant, | : | TRIAL NOS. C-11CRB-37372A&B |
| vs. | : | |
| | | *O P I N I O N.* |
| DENISE TSIBOURIS, | : | |
| Defendant-Appellee. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 18, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*William F. Oswall, Jr.*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellee Denise Tsibouris appeals her convictions for resisting arrest, a second-degree misdemeanor, and disorderly conduct, a fourth-degree misdemeanor, following a jury trial. The jury acquitted her of menacing.

{¶2} On appeal, she argues that (1) the trial court committed plain error in instructing the jury on resisting arrest; (2) the court committed plain error in convicting and sentencing her for fourth-degree-misdemeanor disorderly conduct when the jury instructions and verdict form did not reference the aggravating elements necessary to elevate the offense to a fourth-degree misdemeanor; and (3) her trial counsel was ineffective for failing to object to these errors and to the admission of prejudical testimony.

{¶3} We conclude that the trial court erred as a matter of law in convicting and sentencing Tsibouris for fourth-degree-misdemeanor disorderly conduct, when the jury instructions and verdict form only referenced minor-misdemeanor disorderly conduct. We affirm the trial court's judgments in all other respects.

### *The Jury Trial*

{¶4} At trial, the state presented the following evidence. On December 1, 2011, Colerain Township Police Sergeant Scott Owen was working as part of a robbery task force. He was dressed in plainclothes and patrolling neighborhoods in an unmarked car with Detective Hendricks, when he observed what he thought was an unoccupied car on Niagara Street parked behind a marked patrol car. When the car's lights suddenly came on and the car made a U-turn, Sergeant Owen followed the car and radioed in the license plate number. Upon learning that the license plate had a warrant for menacing attached to it, he radioed for a uniformed officer to make

a traffic stop. But before that could happen, the car pulled into the parking lot of a Kroger store on Colerain Avenue. The driver exited from the vehicle and walked into the store.

{¶5} Sergeant Owen saw Officer Stockmeier, who just happened to be driving through the parking lot on his regular patrol, and asked Officer Stockmeier to assist him in stopping the driver, who was entering the store. As the three officers entered the Kroger store, they ran into Officer Hussel, who was in uniform working an off-duty detail. Together, they approached the driver in front of the customer service desk. Sergeant Owen asked the driver if her name was "Denise." She asked Sergeant Owen, "Why do you want to know?"

{¶6} He explained that the vehicle from which she had just exited had a menacing warrant attached to it for a person named "Denise." She eventually said, "yes" that her name was Denise, and she even told the officer how to pronounce her last name—Tsibouris. Sergeant Owen explained to her that they needed to go out to Officer Stockmeier's patrol car. She told the officers that she was not going outside with them.

{¶7} Officer Stockmeier then placed handcuffs on Tsibouris. As the officers were escorting her out of the store, Tsibouris began screaming for help and shouting racial slurs at the officers. They called for a female officer from Mount Healthy to come to the scene to search Tsibouris. As they waited by the police car for the female officer to arrive, Tsibouris continued to scream and yell. Sergeant Owen and Officer Stockmeier told her repeatedly to calm down, and explained that it was only a misdemeanor warrant, but Tsibouris continued to scream and call the officers names.

{¶8}   When a crowd of people began forming in the parking lot, the officers attempted to put Tsibouris inside the police cruiser.  Tsibouris refused to get inside the cruiser despite being told several times that she was under arrest.  Once the officers got her onto the back seat, she would not slide across the seat, so Sergeant Owen had to eventually pull her through.  Inside the cruiser, Tsibouris continued to scream and yell racial slurs at the officers, and she kicked the window.

{¶9}   Tsibouris, while handcuffed, took her right hand and put it into her right front pocket.  The officers testified that they had to get Tsibouris out of the cruiser because they did not know what was in her hand.  Tsibouris, however, refused to get out of the cruiser and resisted all of the officers' commands to open her hand.  So Sergeant Owen reached in to pull Tsibouris out of the vehicle.  She kicked him in the chest.  Officer Stockmeier then sprayed mace at her, and the officers were able to pull her out of the vehicle.  Sergeant Owen then pried her hand open, but there was nothing in it.

{¶10}  Around this time, Officer Jamie Byrd arrived from Mount Healthy and searched Tsibouris.  Tsibouris began complaining of the effects of the mace and was yelling profanities, despite Officer Byrd's requests that she calm down.  Tsibouris then started complaining of chest pains.  The life squad, which had already been called, tried to examine Tsibouris, but her behavior was so disruptive that it was difficult for the life squad to do its job.  Officer Stockmeier subsequently transported Tsibouris to the hospital where she was treated and released.  He then took her to the Hamilton County Justice Center.

{¶11}  Tsibouris testified that while she was shopping at Kroger, she was approached by two men in plainclothes, who questioned her about her identity.  The men told Tsibouris that they had a warrant for her arrest, and she should put her

4

hands behind her back. She complied and was handcuffed. According to Tsibouris, the officers then walked her out of the store, placed her against the police cruiser, and vigorously frisked her. While she was in the police cruiser, she heard various police officers at the scene begin to yell. They rushed the car where she was located and threw open the doors while continuing to yell. She was scared, so she started yelling and screaming for them to leave her alone as she tried to get over in the corner of the vehicle. The officers maced her and pulled her out of the car to the ground. The officers stepped on her neck and back. Her eyes, chest, and throat were burning. Tsibouris felt that she had been assaulted. She began screaming for help. Her chest started hurting and she requested an ambulance. When the ambulance arrived, the officers took her out of the car and another female officer frisked her. She was very upset because she had already been frisked. She was put into the ambulance, and given towels so she could spit out the mace. She was then transported to the hospital and the Justice Center.

### *Jury Verdict and Sentence*

{¶12} The jury found Tsibouris guilty of resisting arrest and disorderly conduct, but not guilty of menacing. At the conclusion of her jury trial on May 7, 2012, the trial court ordered that Tsibouris be held in jail without bond pending sentencing. On May 18, 2012, the trial court sentenced Tsibouris to 90 days in jail for resisting arrest and 30 days for disorderly conduct. The trial court ordered the sentences to be served concurrently, and credited Tsibouris with the ten days she had already served in jail. The trial court also ordered Tsibouris to pay a jury fee of $351.

{¶13} During the time that she was being held in jail pending sentencing, Tsibouris filed a motion to stay her sentence in conjunction with her notice of appeal.

5

Following her sentencing hearing, however, Tsibouris withdrew the motion to stay her sentence.

## *Tsibouris's Appeal*

{¶14} Tsibouris's original appellate counsel submitted a no-error brief in accordance with Loc.R. 16.2 and the procedures detailed in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). But because a transcript of the guilt-or-innocence phase of trial was not filed until eight months after appointed counsel had filed the first of three no-error briefs, and one day before submission for decision, we concluded that counsel had failed to conduct a conscientious examination of the case—an essential prerequisite to concluding that the proceedings in the trial court were free from error—thus depriving Tsibouris of constitutionally adequate representation on appeal. We, therefore, granted appointed counsel's motion to withdraw and appointed new appellate counsel to represent Tsibouris. *See State v. Tsibouris*, 1st Dist. Hamilton Nos. C-120414 and C-120415, 2013-Ohio-3324.

{¶15} Tsibouris's newly-appointed appellate counsel has filed two separate briefs raising four assignments of error that allege: (1) Tsibouris's conviction for resisting arrest must be vacated due to an erroneous jury instruction; (2) the trial court erred in convicting and sentencing Tsibouris for a fourth-degree-misdemeanor charge of disorderly conduct; and (3) trial counsel was ineffective in failing to object to the defective jury instructions, the verdict form for the disorderly-conduct offense, the trial court's imposition of a sentence for fourth-degree disorderly conduct, and highly prejudicial testimony during the trial relating to the menacing charge.

## Mootness

{¶16} Before we can address the merits of Tsibouris's assignments of error on appeal, we must first determine if her appeal is moot. Tsibouris argues that even though she withdrew her motion to stay her sentence, her appeal is not moot because she has involuntarily served only a portion of her sentence. She relies upon the Ohio Supreme Court's decision in *City of Cleveland Heights v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278. The state argues that because Tsibouris had moved for a stay, but then later withdrew it, she has voluntarily served her sentence and her appeal is moot.

{¶17} In *State v. Harris*, 109 Ohio App.3d 873, 875, 673 N.E.2d 237 (1st Dist.1996), this court held that a defendant's appeal was not moot where the record certified to this court did not demonstrate that "[the defendant] ha[d], in fact, satisfied the sentence of incarceration meted out by the trial court." Likewise, in the case of *In re Payne*, 1st Dist. Hamilton No. C-040705, 2005-Ohio-4849, ¶ 2-4, this court held that a defendant's appeal was not moot even though he had not filed a motion to stay the trial court's judgment, because the record did not affirmatively demonstrate that he had paid his court costs or served a court-ordered work detail.

{¶18} Similarly here, our review of the record and the municipal court docket shows that Tsibouris has involuntarily served only ten days of her 90-day jail sentence and that she has not paid any of the $351 in jury fees imposed by the trial court. *See* R.C. 2746.02(B) and 2947.23 (jury fees are imposed as part of the court costs in a defendant's criminal sentence). Even if Tsibouris had served her sentence, because she has not paid the $351 in jury fees her case would not be moot. *See State v. Hoff*, 5th Dist. Fairfield No. 02CA89, 2003-Ohio-3858, ¶ 12 (holding that the defendant's appeal was not moot because the record did not reflect that the

7

defendant's courts costs had been paid); *see also State v. Carthon*, 197 Ohio App.3d 677, 2012-Ohio-196, 968 N.E.2d 576, ¶ 3, fn. 2 (2d Dist.) (holding a defendant's appeal was not moot where the appellate court had obtained information from the Xenia Municipal Court, indicating that the defendant had remained on probation and had not paid his fines or costs); *State v. Alford*, 2d Dist. Montgomery No. 25715, 2013-Ohio-5045, ¶ 6, fn. 1, (holding that the defendant's appeal was not moot where a review of the Montgomery County Municipal Court's on-line docket reflected that the defendant had not paid the fine and court costs imposed); *State v. Parrish*, 2d Dist. Montgomery Nos. 25050 and 25032, 2013-Ohio-305, ¶ 5 (holding that when a defendant has yet to pay his fine and costs, his appeal is not moot because there is still some relief that can be granted on appeal). As a result, we cannot conclude that Tsibouris's appeal is moot. We, therefore, turn to the merits of her assignments of error.

### *Jury Instructions*

{¶19} Because Tsibouris's first and third assignments of error are interrelated, we address them together. In her first assignment of error, Tsibouris argues that her conviction for resisting arrest must be vacated due to an erroneous jury instruction. She argues that because disorderly conduct is an offense for which an arrest is lawful only in narrow circumstances, and the jury was instructed only on the minor-misdemeanor form of disorderly conduct, the following jury instruction was improper: "You are instructed as a matter of law, that disorderly conduct is an offense for which a person could be arrested."

{¶20} In her third assignment of error, she argues that the trial court erred in convicting her of disorderly conduct, as a fourth-degree misdemeanor, when the jury was only instructed on the minor-misdemeanor form of the offense, and the

verdict form failed to specify the degree of the disorderly-conduct offense or the additional elements necessary to elevate the offense to a fourth-degree misdemeanor.

{¶21}    Crim.R. 30 provides that "[o]n appeal a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

{¶22}    During the course of Tsibouris's trial, the court asked defense counsel and the prosecuting attorney if they had had an opportunity to review the jury instructions. Defense counsel told the court that he had reviewed the jury instructions and had no issue with them.   Further, defense counsel offered no objection before the jury retired to consider its verdict as required by Crim.R. 30. We, therefore, review Tsibouris's arguments under a plain-error analysis.  *See State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 30-31.

{¶23}    The Ohio Supreme Court has held that when a jury instruction relieves the state of its burden of proving an element of the offense, it violates the defendant's due-process rights.  *State v. Adams*, 62 Ohio St.2d 151, 152-154, 404 N.E.2d 144 (1980). However, for such an error to rise to the level of plain error, it must be prejudicial to the appellant, in that that outcome of the trial clearly would have been different.  *See id.* at 154; *see also State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice*.  State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  This court "must review the jury instructions as a whole and the entire record to determine whether a

9

manifest miscarriage of justice has occurred as a result of the error in the instructions." *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 17.

### *Trial Court's Instructions*

**{¶24}** Here, the trial court provided the following instructions to the jury on resisting arrest and disorderly conduct:

> The Defendant is charged with resisting arrest. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the first day of December, 2011 and in Hamilton County, Ohio, the Defendant recklessly resisted or interfered with the lawful arrest of herself.
>
> If you find the State proved beyond a reasonable doubt all the essential elements of the offense of resisting arrest, your verdict should be guilty.
>
> If you find that the state failed to prove beyond a reasonable doubt any one of the essential elements of the offense of resisting arrest, your verdict must be not guilty.

**{¶25}** The trial court then provided the jury with definitions for "recklessly," "resist or interfere," and "arrest." The court went on to state that:

> The state must prove the arrest was in the process of taking place when the resistance or interference occurred.
>
> Lawful arrest, you must also decide whether the arrest was lawful.
>
> Warrantless arrest, an arrest is lawful if the offense for which the arrest was being made was one for which the Defendant could be arrested, and the arresting officer had authority to make the arrest at the time and place where the alleged resistance or interference took place.

And a reasonable police officer under the facts and circumstances in evidence would have believed that the following elements of disorderly conduct had been committed by the Defendant. To wit, recklessly caused inconvenience, annoyance, or alarm to another by engaging in turbulent behavior.

The State need not prove that the Defendant was, in fact, guilty of the offense, but only that Police Officers Owen and Stockmeier had a reasonable belief of Defendant's guilty [sic].

You are instructed as a matter of law that disorderly conduct is an offense for which a person could be arrested.

If you find that Police Officers Owen and Stockmeier were law enforcement officers employed by Colerain Township Police Department, and that the arrest took place in Colerain Township, you are instructed as a matter of law that Police Officers Owen and Stockmeier had the authority to make the arrest.

Next offense is disorderly conduct:

Defendant is also charged with disorderly conduct. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the first day of December, 2011, in Hamilton County, Ohio, the Defendant recklessly caused inconvenience, annoyance, or alarm to another by engaging in turbulent behavior.

If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of disorderly conduct, your verdict must be guilty.

> If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of disorderly conduct, your verdict must be not guilty.

The trial court then defined the terms "recklessly" and "risk."

### *Resisting Arrest*

{¶26} We first address Tsibouris's arguments relating to the jury instruction on resisting arrest. Resisting arrest is defined in R.C. 2921.33(A), which provides that, "No person recklessly or by force shall resist or interfere with the lawful arrest of a person or another." A lawful arrest is an essential element of the crime of resisting arrest. *State v. Thompson*, 116 Ohio App.3d 740, 743, 689 N.E.2d 86 (1st Dist.1996); *State v. Hendren*, 110 Ohio App.3d 496, 674 N.E.2d 774 (11th Dist.1986). In order to show a lawful arrest, the state must prove not only that there was a reasonable basis to believe an offense had been committed, but also that the offense was one for which the defendant could be lawfully arrested. *See State v. Kuehne*, 1st Dist. Hamilton No. C-940971, 1996 Ohio App LEXIS 813, *7 (March 6, 1996); *Thompson* at 743-744. However, it is not necessary for the state to prove that the defendant was in fact guilty of the offense for which the arrest was made to uphold a conviction for resisting arrest. *See State v. Hurst*, 1st Dist. Hamilton No. C-880706, 1989 Ohio App LEXIS 4323, *3-4 (Nov. 22, 1989).

{¶27} Although the trial court instructed the jury that the underlying offense for which Tsibouris had been arrested was disorderly conduct, the undisputed evidence at trial was that the active menacing warrant against Tsibouris was the sole reason she had been arrested by the police. While we recognize that Tsibouris was acquitted of the menacing offense, it was not necessary for the state to prove that Tsibouris was in fact guilty of menacing to uphold her conviction for resisting arrest. *See State v. Hurst*, 1st Dist. Hamilton No. C-880706, 1989 Ohio App. LEXIS 4323, *3-4 (Nov. 22, 1989). As a

result, we cannot conclude that a manifest miscarriage of justice has occurred because of the trial court's erroneous jury instruction. We, therefore, overrule her first assignment of error.

### Disorderly Conduct

{¶28} Tsibouris also argues that the trial court erred in convicting and sentencing her for fourth-degree-misdemeanor-disorderly conduct where the trial court failed to instruct the jury on the additional elements that would have elevated her conduct to a fourth-degree misdemeanor and failed to include the aggravating elements or the degree of the offense on the verdict form signed by the jury. She contends that the jury could have only found her guilty of disorderly conduct as a minor misdemeanor. The state properly and professionally concedes this error—the disorderly conduct should be amended to a minor misdemeanor.

{¶29} Tsibouris was charged by complaint with disorderly conduct in violation of R.C. 2917.11(E)(3)(a), which provides that disorderly conduct is a misdemeanor of the fourth degree if "* * * [t]he offender persists in disorderly conduct after reasonable warning or request to desist." The trial court, however, did not instruct the jury that in order to find her guilty of disorderly conduct, it was required to determine that Tsibouris had persisted in disorderly conduct after a reasonable warning or request to desist. Because the jury was not instructed on the additional elements that would have elevated Tsibouris's conduct from a minor misdemeanor to a misdemeanor of the fourth degree, it could not have found her guilty of disorderly conduct as a misdemeanor of the fourth degree. *See Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-Ohio-CA-93 and 2011-CA-94, 2012-Ohio-4840, ¶ 31-32 (holding that the defendant could not be sentenced for more than minor - misdemeanor disorderly conduct where the complaint did not charge her with a

fourth-degree misdemeanor and the jury was not instructed on such a charge); *see also City of Bedford v. Scott*, 8th Dist. Cuyahoga No. 49658, 1985 Ohio App. LEXIS 9058, *8 (Oct. 24, 1985).

{¶30} Likewise, the verdict form for disorderly conduct signed by the jury provided only as follows: "We the jury in this case being duly impaneled and sworn, do find the Defendant guilty of disorderly conduct, O.R.C. 2917.11(A)." The Ohio Supreme Court has held that

> pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of the criminal offense.

*State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, syllabus; *see State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-542, 1 N.E.3d 374. The court further explained that the state cannot satisfy R.C. 2945.75 by presenting evidence establishing the aggravating element at trial. *Pelfrey* at 426. The court concluded that the failure to include such language in the verdict form amounts to plain error and, under R.C. 2945.75(B), the defendant may only be convicted of the least degree of the offense charged. *Id. See State v. Carthon*, 197 Ohio App.3d 677, 2012-Ohio-196, 968 N.E.2d 576, ¶ 7-13 (2d Dist.); *State v. Floyd*, 4th Dist. Lawrence No. 08CA33, 2009-Ohio-6823, ¶ 24-27. Accordingly, the guilty verdict constitutes a finding that Tsibouris is guilty of the least degree of the offense charged, that being a minor misdemeanor.

{¶31} Because the trial court instructed the jury on only the minor-misdemeanor form of disorderly conduct, and the verdict form failed to include the aggravating elements or the degree of the offense, we agree with Tsibouris and the state

that the trial court erred in sentencing her for disorderly conduct, as a fourth-degree misdemeanor. We, therefore, sustain her third assignment of error.

### Ineffective Assistance

{¶32}   In her second and fourth assignments of error, Tsibouris argues that her trial counsel was ineffective for a number of reasons. She argues that counsel failed to object to the jury instructions, failed to object to the defective verdict form for disorderly conduct, failed to move the trial court to amend the disorderly conduct to a minor misdemeanor at sentencing, and failed to object to highly prejudicial testimony during the trial relating to the menacing charge.

{¶33}   To demonstrate ineffective assistance of counsel, Tsibouris must show that her counsel's representation fell below an objective standard of reasonableness and that she was prejudiced by her counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶34}   Tsibouris first argues that her trial counsel was ineffective for failing to object to the jury instruction on resisting arrest. But given our resolution of Tsibouris's first assignment of error, where we concluded that Tsibouris had been lawfully arrested on the menacing warrant, Tsibouris cannot show that she was prejudiced by her counsel's failure to object to the instruction.

{¶35}   Tsibouris next argues that counsel was ineffective for failing to object to the defective verdict form for disorderly conduct and for failing to move the trial court to amend the disorderly conduct to a minor misdemeanor at sentencing. But because we concluded in our disposition of Tsibouris's third assignment of error that the trial court's failure to instruct the jury on the additional elements that would have elevated disorderly conduct to a fourth-degree misdemeanor and that the

15

absence of such aggravating elements or degree of the offense from the verdict form constitutes plain error, trial counsel's failure to object to the verdict form actually inured to Tsibouris's benefit. *See, e.g., State v. Goodwin*, 9th Dist. Summit No. 23787, 2008-Ohio-738, ¶ 21 (noting that the defendant's failure to object to the verdict form actually prejudices the state, not the defendant, and thus the defendant need not object below to preserve the issue on appeal); *see also Carthon*, 197 Ohio App.3d 677, 2012-Ohio-196, 968 N.E.2d 576, at ¶ 12 (noting that a defendant is better off because of his counsel's failure to object to the verdict form because the trial court may grant leave to correct the verdict form). Likewise, the trial court's error in sentencing Tsibouris for disorderly conduct, as a misdemeanor of the fourth degree, is plain error that the trial court must correct on remand. As a result, whether counsel was ineffective for not objecting to the error at the sentencing hearing is rendered moot, and we need not address that issue in this appeal. *See* App.R. 12(A)(1)(c).

{¶36} Finally, Tsibouris argues that her counsel was ineffective for failing to object to her neighbors' testimony relating to the menacing offense. Tsibouris, however, cannot demonstrate any prejudice from the testimony because she was ultimately acquitted of menacing and the state's evidence on disorderly conduct and resisting arrest arose from separate facts and was supported by the testimony of three police officers. We, therefore, overrule her second and fourth assignments of error.

### *Conclusion*

{¶37} Having sustained Tsibouris's third assignment of error, we reverse the fourth-degree-misdemeanor disorderly-conduct conviction, and remand this cause to the trial court to enter a judgment convicting her of minor-misdemeanor

disorderly conduct and to sentence her accordingly. We affirm the trial court's judgments in all other respects.

Judgments reversed in part, affirmed in part, and cause remanded.

**HENDON, P.J,** and **DEWINE, J.,** concur.

Please note:

The court has recorded its own entry this date.