[Cite as *State v. Protich*, 2025-Ohio-2981.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                      :          APPEAL NO. C-240507
                                               TRIAL NOS. C/24/CRB/7287/A/B/C

    Plaintiff-Appellee,             :

    vs.                             :

                                               *JUDGMENT ENTRY*

ALEXANDER PROTICH,                  :

    Defendant-Appellant.            :


This cause was heard upon the appeal, the record, and the briefs.

The judgments of the trial court are affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 8/20/2025 per order of the court.**


**By:**_____

      **Administrative Judge**

[Cite as *State v. Protich*, 2025-Ohio-2981.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240507 |
| | | TRIAL NOS. C/24/CRB/7287/A/B/C |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| ALEXANDER PROTICH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From are: Affirmed

Date of Judgment Entry on Appeal: August 20, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Jon Vogt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP,* and *Brian T. Goldberg*, for Defendant-Appellant.

**Bock, Presiding Judge.**

**{¶1}** One day in July 2024, patrons visiting Third Eye Brewing Company got more than just food and beverages. Defendant-appellant Alexander Protich loudly accosted multiple patrons, causing a Third Eye employee, T.H., to demand Protich leave the premises. Protich eventually left, but only after T.H. told Protech the police were coming—and after Protich bothered yet another patron.

**{¶2}** When police officers caught up to Protich, he refused to provide his identification, walked away, and "slung" his arm toward officers to avoid being grabbed. After a brief struggle, officers arrested Protich. Following a bench trial, the trial court convicted Protich of obstructing official business, criminal trespass, and resisting arrest. On appeal, Protich asserts that his convictions were supported by insufficient evidence and were against the weight of the evidence.

**{¶3}** We affirm Protich's convictions. First, the State's evidence involving the police officers' encounter with Protich was sufficient to support Protich's obstructing-official-business conviction. His conduct caused a substantial stoppage that hampered the performance of the officers' duties. Second, because Protich refused to leave Third Eye's premises after its employee told him to leave, his criminal-trespass conviction was supported by sufficient evidence. Finally, we reject Protich's argument that he was not guilty of resisting arrest based on the police's alleged lack of a lawful basis for arresting him. Police officers had a reasonable basis to believe that Protich had criminally trespassed and obstructed official business. We accordingly overrule the assignment of error and affirm the trial court's judgments.

## I. *Factual and Procedural History*

### a. Procedural history

**{¶4}** In May 2024, the State charged Protich with failing to comply with a

3

lawful order in violation of R.C. 2921.331, resisting arrest in violation of R.C. 2921.33, criminal trespass in violation of R.C. 2911.21(A)(1), and disorderly conduct in violation of R.C. 2917.11(A)(1). The failing-to-comply charge was later amended to obstructing official business in violation of R.C. 2921.31.

{¶5} Following a bench trial, the trial court found Protich guilty of obstructing official business, resisting arrest, and criminal trespass but not guilty of disorderly conduct. The trial court sentenced Protich to 90 days on the obstructing and resisting-arrest charges and two days on the trespass charge, and credited him for two days of time-served. Protich appealed.

b. Facts

{¶6} In May 2024, T.H., a Third Eye employee, observed Protich verbally accosting customers and raising his voice. T.H. testified that when Protich continued to berate other customers, he directed Protich to wait at the bar to be served. Protich asked T.H. "if we were going to have a problem." T.H. replied, "All right, man, now I'm going to have to ask you to leave." When Protich remained, T.H. repeated, "Will you please leave?" and Protich responded, "No. Fuck you." T.H. warned Protich that if he did not leave, T.H. would call the police. Protich invited T.H. to "[g]o ahead." T.H. called the police and informed the dispatcher that a belligerent customer was on Third Eye's premises and refused to leave. T.H. testified that, after he called the police, he was told by another customer that there was a man "out front bothering them."

{¶7} Officers Brian Limke and Robert Otte of the Sharonville Police Department arrived at the brewery and spoke with T.H., who explained the situation. T.H. identified Protich as the person across the street walking towards a hotel. Limke asked T.H. what he wanted done and T.H. responded that he did not want Protich to return to the brewery.

4

**{¶8}** Otte testified that he and Limke went to the hotel to "investigate the disorderly conduct and the criminal trespass" at Third Eye. Limke spoke with Protich "to get his side of what occurred." Otte testified that Protich began to walk away from the officers. Otte stated that "it was my impression that we did have crimes that had been committed," so he told Protich to stop and grabbed Protich's arm. Protich "slung" his arm back and told Otte not to touch him. Otte instructed Protich to put his hands behind his back. Protich did not comply, so the officers "took him to the ground." Otte stated that during the struggle Protich tucked his arms underneath him to prevent the officers from grabbing him and placing him in handcuffs. Otte testified that it took him and Limke "maybe a minute, two minutes" to handcuff Protich. Limke testified that Protich's resistance hampered the officers' ability to effectuate the arrest.

## II.    Analysis

**{¶9}** In his sole assignment of error, Protich asserts that his convictions are based on insufficient evidence and against the manifest weight of the evidence.

### a.  Standard of review

**{¶10}** In reviewing a conviction under a sufficiency-of-the-evidence standard, an appellate court reviews the evidence in the light most favorable to the State and asks whether a reasonable finder of fact "could have determined that the state proved each element of the offense beyond a reasonable doubt." *State v. Henderson*, 2024-Ohio-2312, ¶ 24 (1st Dist.).

**{¶11}** Under a manifest-weight-of-the-evidence challenge, we ask whether the State failed to meet its burden of persuasion at trial. *State v. Hurt*, 2024-Ohio-3115, ¶ 95 (1st Dist.). An appellate court "must 'independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice."'" *Id.*,

quoting *State v. Kizilkaya*, 2023-Ohio-3989, ¶ 15 (1st Dist.), quoting *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.).

**{¶12}** The "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). Moreover, "a prerequisite for any reversal on manifest-weight grounds is conflicting evidence." *State v. Tate*, 2014-Ohio-3667, ¶ 20.

**{¶13}** Although Protich's assignment of error challenges his convictions on both sufficiency and manifest-weight grounds, Protich's appellate brief offers no argument that any conflicting evidence weighed in his favor. Accordingly, we review only the sufficiency of the evidence supporting his convictions.

### b. Obstructing official business

**{¶14}** Protich first argues that his obstructing-official-business conviction should be reversed because he did not hamper or impede the officers in the performance of any official duty.

**{¶15}** To establish that a defendant is guilty of obstructing official business, the State must prove "that the defendant '(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties.'" *State v. Thompson*, 2024-Ohio-3165, ¶ 23 (1st Dist.), quoting *In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.); R.C. 2921.31(A). A person acts purposely if the person intends to cause a specific result. R.C. 2901.22(A).

**{¶16}** The obstructing-official-business statute prohibits affirmative acts "that create a 'substantial stoppage' of a police officer's official business." *Thompson* at ¶ 24,

6

quoting *State v. Harris*, 2023-Ohio-4387, ¶ 22 (1st Dist.). "There is no particular period of time that constitutes a 'substantial stoppage.'" *State v. Coffman*, 2024-Ohio-1182, ¶ 22 (1st Dist.), quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 18 (1st Dist.). "So long as the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction." *Id.*

**{¶17}** The trial court found that Protich was guilty of obstructing official business when Protich walked away from the officers after being asked to provide identification.

**{¶18}** R.C. 2921.29(A)(1) provides, "No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects . . .: (1) The person is committing, has committed, or is about to commit a criminal offense." Because the officers had information that Protich had criminally trespassed, they could validly require Protich to identify himself.

**{¶19}** Protich is correct that the failure to produce identification when requested by a police officer does not, in itself, constitute obstructing official business. *See State v. Brickner-Latham*, 2006-Ohio-609, ¶ 26 (3d Dist.). But courts have held that defendants may be convicted of obstructing official business if they take additional affirmative acts to hamper or impede the officer from learning their identities. *Id.* at ¶ 27.

**{¶20}** Protich relies on this court's decision in *Coffman*, which held that flight from officers resulting in a 20-second chase was "a de minimis interference, rather than conduct that hampered or impeded the officer." *Coffman*, 2024-Ohio-1182, at ¶ 29 (1st Dist.).

**{¶21}** In *Coffman*, an officer approached the defendant and asked him to

7

"come here for a second," and the defendant fled. *Id.* at ¶ 4. Officers caught the defendant after a 20-second chase. *Id.* Reversing the obstructing-official-business conviction, this court explained that "Coffman's flight did not create a substantial stoppage to the officers' investigation. The chase, from beginning to end, lasted approximately 20 seconds. The state did not establish that Coffman's brief flight was anything more than a de minimis interference, rather than conduct that hampered or impeded the officer." *Id.* at ¶ 29.

**{¶22}** The State asserts *Coffman* is distinguishable, and argues that "Protich's drunken intransigence combined with his affirmative acts of walking away from the police after being told to stop and swatting away Officer Otte's hand demonstrated an overall pattern of resistance that rises to the level of obstruction pursuant to this Court's holding in *In re M.H.*"

**{¶23}** In *In re M.H.*, we explained, "'Where the overall pattern of behavior is one of resistance, * * * officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction.'" *In re M.H.*, 2021-Ohio-1041, ¶ 18 (1st Dist.), quoting *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005). This court also observed that Ohio courts have "held that moving away from and physically resisting officers is sufficient to support a conviction for obstructing official business." *Id.* at ¶ 21 (collecting cases). We concluded that there was sufficient evidence to prove that a juvenile had obstructed official business where she "exhibited 'hostility and unwillingness to cooperate in physical and verbal ways,'" was "twice ordered" to "come here" before she stopped, pulled away from an officer who grabbed her arm, and resisted officers' subsequent attempts to restrain her. *Id.* at ¶ 22. We also observed that the juvenile's conduct "entirely stalled the officers' investigation into the original complaint." *Id.*

**{¶24}** Under *Coffman*, Protich's act of walking away from officers, alone, may have been insufficient to sustain his obstructing-official-business conviction. But the evidence reflecting the totality of his interactions with officers, viewed in the light most favorable to the State, is sufficient to sustain the conviction. Protich's conduct was more than just briefly fleeing, like the defendant in *Coffman*. Protich argued with officers, refused to provide identification, attempted to walk away from officers after lawfully being ordered to provide identification, and "slung" his arm back when an officer grabbed his arm. Viewed in the light most favorable to the State, these actions constitute a substantial stoppage.

**{¶25}** We hold that Protich's conviction for obstructing official business was supported by sufficient evidence.

### c. Criminal trespass

**{¶26}** R.C. 2911.21(A)(1) provides, "No person, without privilege to do so, shall . . . [k]nowingly enter or remain on the land or premises of another."

**{¶27}** Even if a person initially possesses a privilege to be present on the land of another, the owner of the land or an agent of the owner may revoke that privilege. *State v. Staley*, 2021-Ohio-3086, ¶ 13 (1st Dist.). While the language of the trespass statute does not provide a "time limit for leaving the premises once privilege is revoked, . . . several courts have held that a guest must immediately leave once the privilege to remain on the premise is withdrawn." *Id.* at ¶ 21 (collecting cases).

**{¶28}** Here, T.H., as an agent of Third Eye, revoked Protich's privilege when he told Protich, "I'm going to have to ask you to leave." At this point, Protich lacked consent to remain on the premises and was required to "immediately leave." *See id.* But Protich did not leave. When T.H. asked, "Will you please leave," Protich responded, "No. Fuck you." T.H. then warned that if Protich did not leave, T.H. would

9

call the police and Protich invited T.H. to "[g]o ahead."

**{¶29}** Protich does not deny that he refused to leave the brewery when asked; instead, he suggests that he left "shortly after being asked to leave." Protich argues that his conduct did not constitute criminal trespass based on him leaving Third Eye "shortly after" T.H. told him to leave and his having exited from the brewery by the time T.H. had finished calling the police.

**{¶30}** The State argues that Protich remained on the premises well past the time that T.H. requested he leave, in part based on T.H.'s testimony that other patrons complained about Protich's actions outside in front of the brewery. The record is unclear as to whether Protich's outdoor belligerence occurred on or off of Third Eye's property. But in a sufficiency review, we construe the facts most strongly in the State's favor, so we must construe T.H.'s testimony as demonstrating that Protich remained on Third Eye's property even after T.H. had called the police.

**{¶31}** Even if Protich had bothered these patrons off of Third Eye's property, he exited from the property only after multiple requests for him to leave. Protich had already violated the criminal-trespass statute when he failed to leave the first time T.H. asked him to leave, thus revoking his privilege to be on Third Eye's property.

**{¶32}** We hold that Protich's criminal-trespass conviction was supported by sufficient evidence.

### d. Resisting arrest

**{¶33}** Finally, Protich argues that his resisting-arrest conviction should be vacated because there was no lawful basis to arrest him.

**{¶34}** R.C. 2921.33(A) provides, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." By its terms, R.C. 2921.33(A) requires that the State prove beyond a reasonable doubt that the defendant resisted a

"lawful arrest." While the State need not prove that the defendant was guilty of the offense for which the arrest was made, it must prove that the arresting officer had probable cause or a "reasonable basis to believe that the offense for which the defendant has been arrested did, in fact, occur." *State v. Glenn*, 2004-Ohio-1489, ¶ 23. Additionally, the criminal offense must be one for which the defendant can be arrested. *State v. Tsibouris*, 2014-Ohio-2612, ¶ 26 (1st Dist.).

**{¶35}** Protich argues that because he did not obstruct official business or criminally trespass, there was no lawful basis to arrest him. He argues that at the time police arrested him, the only information the officers had was that Protich was being disorderly and Third Eye did not want Protich to return.

**{¶36}** But as explained above, Protich's obstructing-official-business conviction was supported by sufficient evidence. And Officer Otte testified he and Officer Limke went to Third Eye because they "were dispatched for trouble with an employee, a male subject who was . . . refusing to leave." The officers possessed probable cause to believe that Protich had committed criminal trespass.

**{¶37}** We overrule the assignment of error and affirm Protich's convictions.

### III. Conclusion

**{¶38}** For the foregoing reasons, we overrule Protich's assignment of error and affirm the trial court's judgments.

Judgments affirmed.

**NESTOR** and **MOORE, JJ.,** concur.